UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Causey and Friedman
Argued at Norfolk, Virginia


WILLIAM GREATHEART, JR.

                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0689-22-1                JUDGE FRANK K. FRIEDMAN
                                          MAY 16, 2023
CITY OF HAMPTON


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Philip J. Geib (Philip J. Geib, P.C., on brief), for appellant.

Steven H. Theisen (Midkiff, Muncie & Ross, P.C., on brief), for appellee.


This appeal involves a Workers' Compensation settlement, the claimant's standing to enforce it, and whether the claimant was entitled to bring claims to see that his doctors were fully paid for their prior services. The deputy commissioner denied claimant relief, finding that the sweeping settlement terms he entered with his employer denied him standing to bring any further claims. The Workers' Compensation Commission affirmed the deputy commissioner's ruling, finding that: (1) the settlement extinguished all claims, (2) claimant lacked standing, and (3) the medical bills which claimant wanted paid had zero balances in any event. This appeal followed.

BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Claimant's Medical Treatment and the Resulting Payment to Careplex

William Greatheart, Jr. injured his right ankle on August 16, 2015, while working as a police officer for the City of Hampton. Greatheart underwent surgery on October 29, 2015, at

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

Careplex Orthopaedic Ambulatory Surgery Center, for which Careplex billed $20,677. On January 19, 2016, the City paid the health care provider the sum of $12,643.51. This payment left a balance of $8,033.49; however, a "credit adjustment" in that amount reduced the balance due to zero. After this adjustment, the medical providers never sought or requested additional payment.

Greatheart and the City Settle the Claim

Greatheart and the City agreed upon a settlement in 2019 and petitioned the Commission for approval of the agreement. They submitted to the Commission a petition, order, and affidavit from Greatheart. By order entered November 1, 2019, the Commission approved the settlement. Under the terms of the agreement Greatheart received $15,000 and assurances of various future actions by the City.[1] The order further provided that "payment for reasonable and necessary medical treatment" . . . "relating to the injury of August 16, 2015, shall continue for the period between the date of the accident and the date of this Order." At the same time, the order provided that "defendants shall be released and forever discharged from any and all further liability to the claimant, and to all persons claiming through the claimant, for all claims of any nature including, but not limited to, claims for . . . medical benefits."[2] The November 1 order concludes:

> said settlement shall be and hereby is a complete extinguishment of
> all claims for benefits of any nature whatsoever of the claimant,
> and all persons claiming through the claimant, that are now due or
> that hereafter may become due pursuant to the Virginia Workers'

---

[1] In addition to the payment, the City also agreed that, after the settlement occurred, it would undertake future services in the form of cooperating with Greatheart in his pursuit of his line of duty benefits (LODA), as well as take measures to assist Greatheart with his efforts to obtain his service-related accidental disability retirement benefits.

[2] Per a stipulated order: "As of September 10, 2019, the employer had paid $109,933.80 in indemnity benefits and $32,659.25 in medical benefits. The total amount paid to date is $142,593.05."

Compensation Act, as a result of any claims arising directly or indirectly as a result of the injuries sustained by the claimant on or about August 16, 2015, and any change-in-condition or compensable consequence thereof.

The affidavit filed by Greatheart in conjunction with the settlement sets out a list of rights that Greatheart knowingly waives by entering the settlement. The affidavit confirms:

That I understand if I settle this case, and the settlement is approved, then I waive all of the rights set forth above. Further, I cannot obtain any additional compensation or medical benefits from the employer, other than those agreed to in the settlement.

. . . .

THAT I FULLY UNDERSTAND THAT THIS SETTLEMENT FOREVER CLOSES MY CASE, INCLUDING ANY AND ALL COMPENSATION OR MEDICAL BENEFITS EXCEPT THOSE SPECIFICALLY LISTED IN THE SETTLEMENT

Greatheart Seeks Full Payment for His Medical Provider, Careplex; the Deputy Commissioner Rejects the Claim

On May 18, 2021, Greatheart requested a hearing, asserting that the City "underpaid the billed charges" on the Careplex bill. The City moved to dismiss Greatheart's claim, emphasizing the release language of the settlement order. The City asserted that Greatheart had "released" his claim for "payment of a medical bill balance" and "agreed that it was discharged and extinguished by the settlement order" and he was "unequivocally bar[red]" from pursuing it.

Greatheart opposed the City's motion, contending that the settlement order "expressly" provided that payment for reasonable and necessary medical treatment "shall continue for the period between the date of the accident and the date" of the order. The sum sought arose during this period. The deputy commissioner denied the City's motion to dismiss and set the matter for an on-the-record proceeding.

- 3 -

After written arguments from the parties, the deputy commissioner ruled that the settlement order "extinguished [Greatheart's] right to any future medical benefits" and that Greatheart lacked standing to pursue the claim. The deputy commissioner wrote "Greatheart settled the claim for his August 16, 2015 injury by agreeing to the entry of the Commission's November 1, 2019 Order . . . that extinguished his right to any future medical benefits." The deputy commissioner also noted that Greatheart's affidavit had released his "rights to benefits." Thus, he concluded that Greatheart lacked standing to bring this claim. Accordingly, the deputy commissioner denied Greatheart's application for payment of the Careplex bill. Greatheart timely filed a request for review.

### The Commission Upholds the Deputy Commissioner's Ruling

The Commission held that by the settlement order's "plain language," Greatheart had "agreed to extinguish 'all claims for benefits of any nature whatsoever' that were due as of November 1, 2019 or that became due in the future." Further, it found that the settlement order released the City from liability for "all claims of any nature" that "are now due or that hereafter may become due." The Commission also found that "the medical bill submitted by [Greatheart] indicated no further balance was due." Further, it concluded that "the medical provider does not aver that it is owed a debt by the employer. It instead accepted the workers' compensation credit adjustment that was applied to the bill in question." By final order of April 12, 2022, the Commission affirmed the deputy commissioner's opinion. This appeal followed.

### ANALYSIS

Greatheart argues that: (1) the Commission erred in finding he lacked standing, (2) the Commission erred in finding that he gave up entirely his rights to file claims, and (3) that the Commission erred in finding that there were no balances left to pay.

- 4 -

STANDARD OF REVIEW

"On appeal from a decision by the Workers' Compensation Commission, this Court views the evidence in the light most favorable to the prevailing party below." *Loudoun Cnty. v. Richardson*, 70 Va. App. 169, 175 (2019), *aff'd*, 298 Va. 528 (2020). "The Commission's factual findings, if supported by credible evidence, are binding on appeal." *Id.*; *see* Code § 65.2-706(A). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *United Airlines, Inc. v. Sabol*, 47 Va. App. 495, 501 (2006) (quoting *Pruden v. Plasser Am. Corp.*, 45 Va. App. 566, 574-75 (2005)). "If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by [the] Court on appeal, even though there is evidence in the record to support contrary findings of fact." *Richardson*, 70 Va. App. at 176 (alteration in original) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). "Such deference to the Commission does not extend to questions of law, which we review *de novo*." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015).

Whether an appellant's "factual allegations were sufficient to establish standing . . . presents a question of law." *Anders Larsen Tr. v. Bd. of Supervisors of Fairfax Cnty.*, 301 Va. 116, 122 (2022) (quoting *Platt v. Griffith*, 299 Va. 690, 692 (2021)). Settlement agreements "are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally," and are also subject to de novo review. *Price v. Peek*, 72 Va. App. 640, 646 (2020) (quoting *Jones v. Gates*, 68 Va. App. 100, 105 (2017)).

I. Greatheart, as a Party to the Settlement Agreement, Has a Substantial Legal Right to Enforce the Negotiated Deal, and Has Standing to Do So

The basic premise underpinning Greatheart's standing argument is that the City of Hampton agreed to be responsible for the payment of his reasonable and necessary medical expenses through the date of the entry of the order. He then contends that the City underpaid Careplex by over $8,000 and that this shortfall occurred prior to November 1, 2019—the date of entry of the settlement order. He suggests that this underpayment could come back against him via disgruntled medical providers or "balance billing" by his doctors. More importantly, he contends that he has "a justifiable interest" in seeing that the terms of his agreement with the City are honored, which in this case involves making sure Greatheart's healthcare providers are fairly compensated. Ultimately, Greatheart contends that, as a party to the settlement agreement, he has a substantial legal right to enforce the bargain he negotiated and accepted.

By contrast, the City, relying on the broad release language employed in the settlement order, argues that "since the claimant has extinguished his rights to pursue a claim for medical expenses, he has no interest in the subject matter" and, therefore, lacks standing to pursue this relief. In this instance, we believe the City conflates possessing a meritorious claim with standing.

Greatheart points to both *Bockelman v. Millers Landscaping Sprinkler*, No. 1170-21-1, 2022 WL 2307881 (Va. Ct. App. June 28, 2022), and *Northrop Grumman Shipbuilding, Inc. v. Wardell Orthopaedics, P.C.*, 67 Va. App. 420 (2017), as examples where the employer plainly agreed they would remain responsible for payment of the claimant's medical expenses through the date the case settled. He contends these cases illustrate that he did not entirely give up his right to file claims involving past medical payment shortfalls and that he maintained standing to do so.

In *Bockelman*, the claimant sought payment of health expenses that had been written off by a third party, under the terms of the settlement agreement. *Bockelman*, slip op. at 1, 2022 WL 2307881 at *1. This Court found that Bockelman (claimant) had standing even though the medical provider was not a party. We stated "this does not diminish or erase Bockelman's right to pursue enforcement of the settleant agreement, which requires payment for 'all reasonable, necessary and authorized medical expenses . . . incurred.'" *Id.* at 8, 2022 WL 2307881 at *4.

> The unpaid amounts [the medical provider] wrote off were unquestionably medical expenses incurred in the process of treating Bockelman's injury and within the time frame specified in the settlement agreement. Accordingly, Bockelman, as a party to the settlement agreement, had both the right and ability to pursue enforcement of the terms of that agreement.

*Id.*

In *Northrop Grumman*, the parties signed a petition stating the "employer would be 'released from any and all further liability for further compensation, past, present, or future, and future medical benefits.'" *Northrop Grumman*, 67 Va. App. at 425. This Court in *Northrop Grumman* determined this clause meant the employer was not liable for future medical treatments—meaning treatments that were provided after the settlement order on January 14, 2013—however, the employer was liable to the provider "for medical treatment rendered to claimant prior to January 14, 2013." *Id.* at 430.[3]

Standing can be established if a party alleges he or she has a "legal interest" that has been harmed by another's actions. *Howell v. McAuliffe*, 292 Va. 320, 330 (2016). Here, we find that the parties' settlement vested Greatheart with a right to have the medical bills at issue paid by the

---

[3] Both *Northrop Grumman* and *Bockelman* can be distinguished from this case. The *Bockelman* agreement does not contain the sweeping release language found here. In *Northrop Grumman*, the *provider*—not the claimant—filed the demand for payment. Both cases did, however, find that standing was appropriate based on a similar understanding that past medical bills would continue to be paid.

City. As part of the settlement order, the City promised to pay a lump sum to Greatheart and to pay reasonable and necessary medical expenses through the date of the entry of the order. This was a negotiated agreement with bargained for consideration. Greatheart gave up the right to seek future workers' compensation benefits in exchange for the City's promises. Greatheart, as a party to the settlement agreement, has a "substantial legal right" to enforce that agreement. *See Westlake Props. v. Westlake Pointe Prop. Owners Ass'n, Inc.*, 273 Va. 107, 120 (2007) (citing *Cupp v. Bd. of Supervisors of Fairfax Cnty.*, 227 Va. 580, 589 (1984)). Moreover, Greatheart has a legal right to enforce the agreement even where part of that bargain might benefit his medical providers. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Cookson Am. Inc.*, 710 F.3d 470, 475 (2d Cir. 2013) ("It is axiomatic that a party to an agreement has standing to sue a counter-party who breaches that agreement, even where some or all of the benefits of that contract accrue to a third party."). As Greatheart points out, the City's assurance that payment shall continue for reasonable and necessary medical treatment up to the date of the settlement order would be meaningless if he lacked standing to enforce it.

II. The Commission's Finding that the Balance Due is Zero and that the Health Care Providers are Not Seeking Recovery of Any Shortfall is Supported By the Record Here

Having concluded that Greatheart has standing to challenge the alleged medical payment shortfall at issue, we next address the merits of Greatheart's claim. The City, again, urges us to find that the release language is broad enough to fully extinguish all of Greatheart's claims for relief.[4] Greatheart claims the agreement expressly carved out reasonable and necessary medical

---

[4] The November 1, 2019 order provides that payment of reasonable and necessary medical treatment through the date of the order would continue. This suggests that actual shortfalls stemming from this period could still be recovered. The order, however, also provided that the settlement

expenses incurred before November 1, 2019 from the release language. We need not resolve these competing (and arguably conflicting) terms, because we can decide the case on narrower grounds. *See Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015) (Our jurisprudence requires us to choose "the best and narrowest" grounds to resolve our cases.).

We find dispositive the Commission's findings that Careplex accepted the sum tendered as payment in full and that the balance due was $0.00. The record reflects that the City paid Careplex the amount of $12,643.51 in 2016 for its care to Greatheart. Greatheart complains that this left a shortfall of $8,033.49 from the original bill. However, a credit adjustment was made in the amount of $8,033.49, leaving a balance of $0.00. There is nothing within the language of the order that states the medical treatment payments cannot be adjusted, or that the providers cannot accept a lesser sum than initially charged. There is nothing in the record to indicate that the provider has ever sought further payment since 2016. The Commission found that, after the credit adjustment, there was "no further payment owed." In the Commission's words: "the medical provider does not aver that it is owed a debt by the employer. It instead accepted the workers' compensation credit adjustment that was applied to the bill in question."

"The Commission's factual findings, if supported by credible evidence, are binding on appeal." *Richardson*, 70 Va. App. at 175; *see* Code § 65.2-706(A). "In determining whether

---

shall be and hereby is a complete extinguishment of all claims for benefits of any nature whatsoever of the claimant, and all persons claiming through the claimant, that are now due or that hereafter may become due pursuant to the Virginia Workers' Compensation Act, as a result of any claims arising directly or indirectly as a result of the injuries sustained by the claimant on or about August 16, 2015.

The order further states that the City "shall be released and forever discharged from any and all further liability to [Greatheart] . . . for all claims of any nature including, but not limited to, claims for . . . medical benefits . . . which are now due or that hereafter may become due."

- 9 -

credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Sabol*, 47 Va. App. at 501 (quoting *Pruden*, 45 Va. App. at 574-75). In this case, there is a bill ledger which clearly indicates "Balance Due: $0.00." The Commission's finding that there was no balance left to pay is supported by the evidence.

Greatheart argues that the provider may not have been satisfied with the payment of $12,643.51 and that a balance due of $0.00 is not necessarily dispositive here because the provider could change its mind or Greatheart could be "balance billed." We find neither scenario plausible here.[5]

First, there is a one-year statute of limitations placed on the provider to submit "a claim to the Commission contesting the sufficiency of payment for health care services." Code § 65.2-605.1(F). This is an individual right that the provider has, as it is not a party to the claimant's settlement agreement. The one-year statute of limitations begins to run from the date of the last payment received by the healthcare provider. *Id.* In this case, the last payment received was on January 19, 2016, meaning the provider had until January 19, 2017 to file a claim to seek additional compensation. The provider did not do so.[6] Nor—in the intervening years—has it ever claimed to be owed additional sums.

---

[5] Greatheart also relies on *Bockelman* and related cases for the proposition that a write off of sums sought does not necessarily mean that medical debts incurred have been satisfied. This position certainly can be accurate under proper facts. In this case, however, the record supports the Commission's findings that the $0.00 "Balance Due" was correct and that the health care providers never contested the adjusted payment as deficient. That acceptance of the paid sum has extended since January, 2016.

[6] The City also notes that if Greatheart had really wanted his providers to get additional payments, he could have bargained for this in the settlement.

Furthermore, a claimant such as Greatheart cannot be balance billed by a provider:

> No physician, hospital, or other health care provider as defined in § 8.01-581.1 shall balance bill an employee in connection with any medical treatment, services, appliances, or supplies furnished to the employee in connection with an injury for which (i) a claim has been filed with the Commission pursuant to § 65.2-601, (ii) payment has been made to the health care provider pursuant to § 65.2-605.1, or (iii) an award of compensation is made pursuant to § 65.2-704. For the purpose of this subsection, a health care provider "balance bills" whenever (a) an employer or the employer's insurance carrier declines to pay all of the health care provider's charge or fee and (b) the health care provider seeks payment of the balance from the employee. Nothing in this section shall prohibit a health care provider from using the practices permitted in § 65.2-601.1.

Code § 65.2-714(D).

We find that the Commission's findings that the balance due was $0.00 and that the medical provider was not seeking any additional payments were supported by the evidence. Thus, Greatheart's claim was properly rejected.

CONCLUSION

We find that Greatheart did have standing to challenge the medical payment shortfall pre-dating the November 1, 2019 settlement order. However, we find the Commission properly rejected the claim based on its factual findings which are supported by the record.

*Affirmed.*

- 11 -